UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY GRISWOLD as Personal
Representative of The Estate of JOHN E.
GRISWOLD

        Plaintiffs,

vs.                                                                                No.  22-CV-10980     -
                                                                                 Hon.

TRINITY HEALTH-MICHIGAN d/b/a
ST. JOSEPH MERCY LIVINGSTON,
EMERGENCY PHYSICIANS MEDICAL
GROUP, P.C., WILLIAM J.
KANITZ, M.D., COUNTY OF LIVINGSTON, MICHIGAN,
LIVINGSTON COUNTY SHERIFF,
MICHAEL MURPHY, SARGENT TERRY DAVIS,
DEPUTY TRAVIS LINDEN, DEPUTY
PATRICK TURCHI, DEPUTY ALLISON SCHULTE,
DEPUTY JOHN DOE-MARQUETTE, DEPUTY
ERIC VANVLEET, DEPUTY DAVID LOAR,
DEPUTY KURT HEIOB, DEPUTY ALICIA FAMIE
and DEPUTY VINCENT JOHN
Jointly & Severally,

        Defendants.
_____

BRIAN J. McKEEN (P34123)
TODD C. SCHROEDER (P81607)
McKEEN & ASSOCIATES, P.C.
Attorney for Plaintiff
645 Griswold St., Suite 4200
Detroit, MI 48226
(313) 961-4400
_____

**PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, TIMOTHY GRISWOLD as Personal Representative of The Estate of JOHN E. GRISWOLD, by and through his attorneys, McKeen & Associates, P.C., and for his Complaint against Trinity Health-Michigan D/B/A St. Joseph Mercy Livingston, Emergency Physicians Medical Group, P.C., Ascension Medical Group Michigan, William J. Kanitz, M.D., County of Livingston, Michigan, Livingston County Sheriff, Michael Murphy,

- 1 -

Sargent Terry Davis, Deputy Travis Linden, Deputy Patrick Turchi, Deputy Allison Schulte, Deputy John Doe-Marquette, Deputy Eric Vanvleet, Deputy David Loar, Deputy Kurt Heiob, Deputy Alicia Famie, Deputy Vincent John alleges as follows:

## JURISDICTION AND VENUE

1. This action is brought, in part, pursuant to 42 U.S.C. §1983 to redress a Fourteenth Amendment violation for failure to provide adequate medical attention which led to the death of John E. Griswold.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1367.

3. Venue is proper in this district under 28 U.S.C. §1391(b) because the events giving rise to the claims asserted in this complaint occurred in this judicial district.

## PARTIES

4. Plaintiff Timothy Griswold was at all times relevant a resident of the County of Livingston, State of Michigan.

5. Plaintiff John E. Griswold, deceased, was at all times relevant a resident of the County of Livingston, State of Michigan.

6. Defendant Trinity Health-Michigan d/b/a St. Joseph Mercy Livingston was at all times relevant hereto a health institution conducting business in the County of Livingston, State of Michigan.

7. Defendant Emergency Physicians Medical Group, P.C., was at all times relevant hereto a health institution conducting business in the County of Washtenaw, State of Michigan.

8. Defendant William J. Kanitz, M.D., was at all times relevant hereto a licensed and practicing physician, board certified in Emergency Medicine, conducting business in the County of Washtenaw, State of Michigan.

9. Defendant County of Livingston, Michigan is a County of the State of Michigan. It oversees the Livingston County Sheriff Department, which, in turn operates the Livingston County Jail.

McKeen & Associates, P.C.   645 Griswold Street, Suite 4200   Detroit, MI 48226   (313) 961-4400

10. Defendant Livingston County Sheriff, Michael Murphy is the Sheriff of Livingston County. At all times relevant to the events at issue in this case, Defendant Murphy was employed by the Livingston County Sheriff's Department in the capacity of Sheriff. As such, he was acting under the color of law. At all times relevant to the issue in this case, Defendant Murphy promulgates rules, regulations, policies and procedures as Sheriff of Livingston County for the provision of certain medical care by medical personnel and correctional officers to detainees at the Livingston County Jail. He is sued in his official and individual capacity.

11. Defendants Sargent Terry Davis, Deputy Travis Linden, Deputy Patrick Turchi, Deputy Allison Schulte, Deputy John Doe-Marquette, Deputy Eric Vanvleet, Deputy David Loar, Deputy Kurt Heiob, Deputy Alicia Famie, and Deputy Vincent John were employees of the Livingston County Jail during the relevant period. At all times relevant to the events at issue in this care, these defendants were acting under the color of law and within the scope of their employment with Livingston County Jail. These defendants are sued here in their official and individual capacities.

**FACTS**

12. On October 14, 2018, John Griswold ("John") was a 54-year-old father of two grown children who found himself being arrested for the first time after what his family described as aggressive behavior that was atypical of John.

13. Officers on-scene at John's home found John in his kitchen and observed "a large amount of pills" on the kitchen counter. John advised he took about 10 pills but could not identify which pills he took.

14. Upon arrival at the Livingston County Jail, Nurse Trina Barnett was asked to evaluate John. She found John to be tachycardic, diaphoretic, with pinpoint pupils, slow to respond to questions, and "extremely mumbly".

15. Nurse Barnett commented that John should not be admitted to Livingston County Jail until being medically cleared.

- 3 -

### October 14, 2018: St. Joseph Mercy Livingston Hospital

16. At approximately 3:00PM John was brought to St. Joseph Mercy Livingston, where he was treated by William. J. Kanitz, M.D.

17. Dr. Kanitz recorded that John was diaphoretic, with an elevated heartrate, and pinpoint pupils.

18. A urine drug screen returned positive for amphetamines, likely a false-positive due to Trazadone.

19. During his time at St. Joseph Mercy Livingston, no one asked John what medications he was taking.

20. Lab work revealed abnormal levels of Potassium and Trazadone.

21. An electrocardiogram revealed QT prolongation, which can result in sudden cardiac arrest if ignored.

22. Without further investigation, consults with toxicology or infectious disease, resolution of abnormal labs, nor continued observation, John was discharged back to the jail.

### October 14, 2018: Livingston County Jail

23. At approximately 5:55PM John arrived back at the jail and was held in Cell 223A/3A.

24. Defendant Deputy Travis Linden attempted to book John into the Jail Management System, but John did not respond to booking questions.

25. Defendant Livingston County Sheriff, Michael Murphy, was responsible for all jail policy and procedure concerning inmates. In accordance with Livingston County Jail policy, John was held in Cell 223A/3A, located within the Intake Unit, in his civilian clothing, pending his ability to respond to booking questions. John was placed in the cell at approximately 6:06PM.

26. At approximately 6:35PM, Defendant Sargent Terry Davis enters John's cell and attempts to speak to John, but John is non-responsive.

27. At approximately 7:01PM, Defendants Deputy Travis Linden and Deputy Patrick Turchi enter John's cell and remove his handcuffs. John was too weak to rise on his own, and

- 4 -

Defendants Deputy Linden and Deputy Turchi had to pick him up to remove his cuffs. John was unsteady on his feet. Defendants Deputy Linden and Deputy Turchi did not alert anyone to John's weak medical condition, despite knowledge that John was recently at the hospital for medical clearance.

28. The entire time John was locked in Cell 223A/3A, John sat on a cot on the floor with his back against the wall and legs outstretched. John would remain in that position until he was found dead thirteen (13) hours later the following day, at approximately 7:40AM.

29. A camera within John's cell, and another outside his cell, captured all relevant movements and events.

30. Over the next thirteen (13) hours, John was never adequately checked.

31. At 8:00PM John vomited all over himself, his clothes, and his cot. The vomit, his vomit-saturated clothing, and vomit covering his cot are clearly visible.

32. At 8:40PM Defendants Deputies Linden and Turchi enter John's cell but allow John to remain covered with vomit and fail to seek any medical attention for him.

33. Defendant Sargent Terry Davis was responsible to ensure that John's cell was adequately checked at regular intervals.

34. Defendants Sargent Terry Davis, Deputy Travis Linden, Deputy Patrick Turchi, Deputy Allison Schulte, Deputy John Doe-Marquette, Deputy Eric Vanvleet, Deputy David Loar, Deputy Kurt Heiob. Deputy Alicia Famie, and Deputy Vincent John participated in cell checks or otherwise observed John without meaningful movement and saturated in vomit.

35. On October 14, 2018, between 8:41PM and midnight, Defendant Deputies Linden and Schulte perform walk-by cell checks, are able to observe John soaked in vomit and without any change in position but fail to seek medical attention or take any other action to assess John's well-being.

36. From October 14, 2018, at 8:41PM to October 15, 2018 at 3:14AM, no one enters John's cell, no one attempts to interact with him, and no one seeks medical attention.

- 5 -

**October 15, 2018: Livingston County Jail**

37. On October 15, 2018, at 12:17AM, Defendant Deputy Linden conducts a walk-by cell check. Defendant Deputy Linden acknowledged that he observed that John was covered in vomit. Defendant Deputy Linden also observed that John had not changed positions but does not seek medical attention or take any other action to assess John's well-being.

38. On October 15, 2018, between 12:18AM and 3:14AM, Defendant Deputies Linden, Turchi, Schulte, and Marquette perform walk-by cell checks, are able to observe John soaked in vomit and without any change in position but fail to seek medical attention or take any other action to assess John's well-being.

39. At 3:15AM Defendant Deputy Linden enters John's cell, but again fails to seek medical attention despite John having remained in the same position for the past nine (9) hours, despite the smell of vomit, despite John being covered in vomit, and despite awareness that serious medical concerns were present at the time John arrived at the Livingston County Jail.

40. On October 15, 2018, between 3:16AM and 4:30AM, Defendant Deputies Linden, Turchi, and Schulte perform walk-by cell checks, are able to observe John soaked in vomit and without any change in position but fail to seek medical attention or take any other action to assess John's well-being.

41. On October 15, 2018, at 4:31AM, Defendant Sargent Davis alleges that he stopped and tried to speak to John. The video surveillance reveals he stopped outside John's cell, knocked once, then continued walking. The interaction lasted six (6) seconds. Sargent Davis is able to observe John soaked in vomit and without any change in position but fails to seek medical attention or take any other action to assess John's well-being.

42. On October 15, 2018, between 4:32AM and 7:06AM, Defendant Deputies Linden, Turchi, Famie, VanVleet, John, Heiob, and Schulte perform walk-by cell checks, are able to observe John soaked in vomit and without any change in position but fail to seek medical attention or take any other action to assess John's well-being.

43. At 6:04AM Defendants Deputy Vanvleet and Deputy John peer into John's cell and note that John appeared to be breathing. John and his clothing and his cot remained saturated in vomit. Deputy VanVleet and Deputy John fail to seek medical attention or take any other action to assess John's well-being.

44. At 7:08AM breakfast is placed outside John's cell. No one attempts to notify John that breakfast has been served. John does not move. Defendant Deputies VanVleet, Heiob, and John peer into John's cell. John is breathing, but his position remains unchanged from the previous evening and his clothing and cot saturated with vomit. Deputies VanVleet, Heiob, and John fail to seek medical attention or take any other action to assess John's well-being.

45. At 7:09AM John's body shakes and flutters.

46. At 7:12AM it appears John's breathing slows and becomes shallow. John's last noticeable movement is at 7:12AM.

47. At 7:15AM Defendant Deputy VanVleet walks by and smacks his hand on the glass wall of John's cell. John does not move in response to this noise. It appears John was not breathing. Deputy VanVleet fails to seek medical attention or take any other action to assess John's well-being.

48. At 7:29AM John's breakfast tray is collected.

49. At 7:42AM Defendant Deputies Heiob and John entered John's cell and drag his deceased body out of the cell.

50. CPR was initiated but was unsuccessful.

51. Deputies noted dried vomit in John's cell and vomit on his person.

52. The autopsy report revealed John's cause of death as sudden cardiac death.

53. John's family has been greatly distraught by their loss.

McKeen & Associates, P.C.   645 Griswold Street, Suite 4200   Detroit, MI 48226   (313) 961-4400

**COUNT I - SECTION 1983 CLAIM AGAINST DEFENDANTS COUNTY OF LIVINGSTON, MICHIGAN, LIVINGSTON COUNTY SHERIFF, MICHAEL MURPHY, SARGENT TERRY DAVIS, DEPUTY TRAVIS LINDEN, DEPUTY PATRICK TURCHI, DEPUTY ALLISON SCHULTE, DEPUTY JOHN DOE-MARQUETTE, DEPUTY ERIC VANVLEET, DEPUTY DAVID LOAR, DEPUTY KURT HEIOB, DEPUTY ALICIA FAMIE, DEPUTY VINCENT JOHN**

54. Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

55. As described above, Defendants County of Livingston, Michigan, Livingston County Sheriff, Michael Murphy, failed to have in pace policies that promoted and protected an inmate's health, and Sargent Terry Davis, Deputy Travis Linden, Deputy Patrick Turchi, Deputy Allison Schulte, Deputy John Doe-Marquette, Deputy Eric Vanvleet, Deputy David Loar, Deputy Kurt Heiob, Deputy Alicia Famie, Deputy Vincent John failed to ensure that John received prompt and adequate medical care subsequent to his ingestion of pills and discharge from St. Joseph Mercy Livingston, and subsequent to John vomiting.

56. The actions of Defendants, County of Livingston, Michigan, Livingston County Sheriff, Michael Murphy, Sargent Terry Davis, Deputy Travis Linden, Deputy Patrick Turchi, Deputy Allison Schulte, Deputy John Doe-Marquette, Deputy Eric Vanvleet, Deputy David Loar, Deputy Kurt Heiob, Deputy Alicia Famie, Deputy Vincent John exhibited deliberate indifference to John's serious medical needs, were performed under color of state law, and violated John's rights under the Fourteenth Amendment to the United States Constitution.

57. As a direct and proximate result of the actions of Defendants County of Livingston, Michigan, Livingston County Sheriff, Michael Murphy, Sargent Terry Davis, Deputy Travis Linden, Deputy Patrick Turchi, Deputy Allison Schulte, Deputy John Doe-Marquette, Deputy Eric Vanvleet, Deputy David Loar, Deputy Kurt Heiob, Deputy Alicia Famie, Deputy Vincent John in failing to ensure that John received prompt and adequate medical care, John's condition was allowed to deteriorate, eventually suffering a sudden cardiac death, passing away on October 15, 2018.

58. The conduct of Defendants County of Livingston, Michigan, Livingston County Sheriff, Michael Murphy, Sargent Terry Davis, Deputy Travis Linden, Deputy Patrick Turchi, Deputy Allison Schulte, Deputy John Doe-Marquette, Deputy Eric Vanvleet, Deputy David Loar, Deputy Kurt Heiob, Deputy Alicia Famie, Deputy Vincent John was willful and exhibited a flagrant disregard for John's federally secured rights, and was undertaken with malice and/or reckless disregard for John's constitutional rights. Accordingly, these defendants are liable to John under 42 U.S.C. ' 1983.

59. WHEREFORE, Plaintiff hereby requests an award of compensatory damages and punitive damages, against the Defendants herein, jointly and severally, in whatever amount that Plaintiff is found to be entitled to, together with costs, interest and attorney fees, and for such further relief as this Court may deem appropriate and just.

## COUNT II – STATE LAW CLAIM FOR RESPONDEAT SUPERIOR

60. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

61. Count I is alleged against Defendant Sheriff Murphy.

62. In committing the acts alleged in the preceding paragraphs, the individual Defendants were employees, members, and agents of the St. Clair County Sheriff's Department, acting at all relevant times within the scope of their employment.

63. Defendant Sheriff Murphy is liable as principal for all torts committed by his agents.

## COUNT III – STATE LAW CLAIM FOR INDEMNIFICATION

64. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

65. Count III is alleged against Defendant Livingston County.

66. Michigan law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

67. The individual Defendants were employees of the Livingston County Sheriff's Department who acted within the scope of their employment in committing the misconduct described above.

68. Livingston County is obligated to pay any judgment entered against Sheriff Watson in an official capacity.

### COUNT IV - STATE CLAIM OF MEDICAL NEGLIGENCE OF WILLIAM J. KANITZ, M.D.

69. Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

70. William J. Kanitz M.D., was negligent, inter alia, in the following particulars, in that a licensed and practicing physician, Board Certified in Emergency Medicine, as well as any and all other physicians, physicians-in-training, physician assistants, and other mid-level healthcare providers, when evaluating and treating a patient such as John E. Griswold, owed a duty to timely and properly:

   a. Perform and appreciate a thorough history and physical examination, including a list of what medications the patient is currently taking;

   b. Recognize and appreciate the presence of QT prolongation on the patient's electrocardiogram;

   c. Recognize and appreciate that long QT interval can lead to sudden cardiac arrest;

   d. Refrain from discharging the patient without completing a medical evaluation, including all appropriate evaluations and management of his prolonged QT interval,

- 10 -

  e. Monitor the patient until he can be safely discharged;

  f. Recognize that this patient has experienced a drug overdose and respond with appropriate evaluations and management;

  g. Appreciate the presence of abnormal labs, including the presence of low potassium, and properly manage the same;

  h. Prevent the patient from suffering a worsening of their condition using any and all reasonable means;

  i. Ensure John E. Griswold is treated in a timely and proper manner;

  j. Communicate and coordinate with the patient's other healthcare providers to ensure he receives the best possible care, and any and all abnormal symptoms are appropriately worked-up;

  k. Evaluate the patient for the need for psychiatric evaluation;

  l. To guard against any additional acts of negligence identified through the discovery process.

71. Defendant William J. Kanitz M.D. did none of these things, and such acts or omissions constitute professional negligence for which the Defendant William J. Kanitz M.D. is directly liable to Plaintiff.

72. At all times relevant hereto, Defendant William J. Kanitz M.D. was an employee, agent, servant, or ostensible agent of Trinity Health-Michigan d/b/a St. Joseph Mercy Livingston and Emergency Physicians Medical Group, P.C., therefore, Defendants Trinity Health-Michigan d/b/a St. Joseph Mercy Livingston and Emergency Physicians Medical Group, P.C., is vicariously liable for the negligence of Defendant William J. Kanitz M.D. pursuant to the Doctrine of Respondeat Superior and ostensible agency.

73. As a direct and proximate result of John E. Griswold's healthcare providers' failure to comply with the standard of care as outlined above, including, but not limited to, failure to provide further diagnostic testing and observation prior to discharge, John was returned to the jail where his condition was allowed to deteriorate, eventually suffering a sudden cardiac death, passing away on October 15, 2018.

74. As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under the Michigan Wrongful Death Act, Michigan Statutory Law, and Common Law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Seventy-Five Thousand [$75,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney fees, as well as all other damages allowed under Michigan Law.

### COUNT V - STATE CLAIM OF VICARIOUS LIABILITY OF TRINITY HEALTH-MICHIGAN D/B/A ST. JOSEPH MERCY LIVINGSTON

75. Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

76. Defendant Trinity Health-Michigan d/b/a St. Joseph Mercy Livingston was negligent, inter alia, in the following particulars, in that as a duly accredited and licensed health care institution, by and through their agents, actual and/or ostensible, servants, and/or employees, including, but not limited to, William J. Kanitz, M.D., any and all other physicians, physicians-in-training, physician assistants, other mid-level healthcare providers, and nursing staff, which hold themselves out to the public as being competent of rendering medical services, when confronted with a patient such as John E. Griswold, owed a duty to timely and properly:

   a. Select, employ, train, and monitor its agents, actual and/or ostensible, servants, employees and/or its staff of physicians, nurses and residents, to ensure they were competent to perform adequate medical care for a patient;

   b. Ensure that appropriate policies and procedures are adopted and followed including, but not limited to, protocol for appropriate patient history recording, including medications the patient is currently taking, and assessing the need for psychiatric evaluation;

   c. Prevent the patient from suffering a worsening of their condition using all reasonable means;

   d. Any additional acts of negligence identified through the discovery process.

77. As a direct and proximate result of John E. Griswold's healthcare providers' failure to comply with the standard of care as outlined above, including, but not limited to, failure to provide further diagnostic testing and observation prior to discharge, John was returned to the jail where his condition was allowed to deteriorate, eventually suffering a sudden cardiac death, passing away on October 15, 2018.

78. As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under the Michigan Wrongful Death Act, Michigan Statutory Law, and Common Law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Seventy-Five Thousand [$75,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney fees, as well as all other damages allowed under Michigan Law.

## COUNT VI - STATE CLAIM OF VICARIOUS LIABILITY OF EMERGENCY PHYSICIANS MEDICAL GROUP, P.C.

79. Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

80. Defendant Emergency Physicians Medical Group, P.C., was negligent, inter alia, in the following particulars, in that as a duly accredited and licensed health care institution, by and through their agents, actual and/or ostensible, servants, and/or employees, including, but not limited to, William J. Kanitz, M.D., any and all other physicians, physicians-in-training, physician assistants, other mid-level healthcare providers, and nursing staff, which hold themselves out to the public as being competent of rendering medical services, when confronted with a patient such as John E. Griswold, owed a duty to timely and properly:

    a. Select, employ, train, and monitor its agents, actual and/or ostensible, servants, employees and/or its staff of physicians, nurses and residents, to ensure they were competent to perform adequate medical care for a patient;

McKeen & Associates, P.C.   645 Griswold Street, Suite 4200   Detroit, MI 48226   (313) 961-4400

      b. Ensure that appropriate policies and procedures are adopted and followed including, but not limited to, protocol for appropriate patient history recording, including medications the patient is currently taking, and assessing the need for psychiatric evaluation;

      c. Prevent the patient from suffering a worsening of their condition using all reasonable means;

      d. Any additional acts of negligence identified through the discovery process.

81. As a direct and proximate result of John E. Griswold's healthcare providers' failure to comply with the standard of care as outlined above, including, but not limited to, failure to provide further diagnostic testing and observation prior to discharge, John was returned to the jail where his condition was allowed to deteriorate, eventually suffering a sudden cardiac death, passing away on October 15, 2018.

82. As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under the Michigan Wrongful Death Act, Michigan Statutory Law, and Common Law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Seventy-Five Thousand [$75,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney fees, as well as all other damages allowed under Michigan Law.

Respectfully Submitted:

McKEEN & ASSOCIATES, P.C.

/s/ *Brian J. McKeen*
BRIAN J. McKEEN (P34123)
TODD C. SCHROEDER (P81607)
Attorneys for Plaintiff
645 Griswold St., Suite 4200
Detroit, MI 48226
(313) 961-4400

DATED: May 19, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY GRISWOLD as Personal
Representative of The Estate of JOHN E.
GRISWOLD

        Plaintiffs,

vs.                                                                                      No.  22-cv-10980         -
                                                                                                                             Hon.

TRINITY HEALTH-MICHIGAN d/b/a
ST. JOSEPH MERCY LIVINGSTON,
EMERGENCY PHYSICIANS MEDICAL
GROUP, P.C., ASCENSION MEDICAL
GROUP MICHIGAN, WILLIAM J.
KANITZ, M.D., ., COUNTY OF LIVINGSTON, MICHIGAN,
LIVINGSTON COUNTY SHERIFF,
MICHAEL MURPHY, SARGENT TERRY DAVIS,
DEPUTY TRAVIS LINDEN, DEPUTY
PATRICK TURCHI, DEPUTY ALLISON SCHULTE,
DEPUTY JOHN DOE-MARQUETTE, DEPUTY
ERIC VANVLEET, DEPUTY DAVID LOAR,
DEPUTY KURT HEIOB, DEPUTY ALICIA FAMIE
and DEPUTY VINCENT JOHN
Jointly & Severally,

        Defendants.
_____
BRIAN J. McKEEN (P34123)
TODD C. SCHROEDER (P81607)
McKEEN & ASSOCIATES, P.C.
Attorney for Plaintiff
645 Griswold St., Suite 4200
Detroit, MI 48226
(313) 961-4400
_____

## **DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, TIMOTHY GRISWOLD as Personal Representative of The Estate of JOHN E. GRISWOLD, by and through his attorneys, McKeen & Associates, P.C., and hereby demands a trial by jury in the above-entitled cause of action.

- 15 -

                Respectfully Submitted:

                McKEEN & ASSOCIATES, P.C.

                /s/ *Brian J. McKeen*

                BRIAN J. McKEEN (P34123)
                TODD C. SCHROEDER (P81607)
                Attorneys for Plaintiff
                645 Griswold St., Suite 4200
                Detroit, MI 48226
DATED:  May 19, 2022       (313) 961-4400

Re: Timothy Griswold, as Personal Representative
of The Estate of John E. Griswold

## AFFIDAVIT OF MERITORIOUS CLAIM OF BRYAN S. JUDGE MD

STATE OF MICHIGAN )
)ss.
COUNTY OF KENT )

I, Bryan S. Judge MD by this Affidavit, state that during the relevant time period at issue in this matter, I was a licensed, registered and practicing physician, board certified in Emergency Medicine, and devoting a majority of my professional time for the preceding year to, the clinical practice of Emergency Medicine and I attest to the following:

1. I have read the Notice of Intent to File a Claim in this action.

2. I have reviewed all the medical records provided to me by Plaintiff's Counsel.

3. William J. Kanitz, M.D., a licensed and practicing physician, Board Certified in Emergency Medicine, as well as any and all other physicians, physicians-in-training, physician assistants, and other mid-level healthcare providers, when evaluating and treating a patient such as John E. Griswold, owed a duty to timely and properly:

   a. Perform and appreciate a thorough history and physical examination, including a list of what medications the patient is currently taking;

   b. Recognize and appreciate the presence of QT prolongation on the patient's electrocardiogram;

   c. Recognize and appreciate that long QT interval can lead to sudden cardiac arrest;

   d. Refrain from discharging the patient without completing a medical evaluation, including all appropriate evaluations and management of his prolonged QT interval,

   e. Monitor the patient until he can be safely discharged;

   f. Recognize that this patient has experienced a drug overdose and respond with appropriate evaluations and management;

McKeen & Associates, P.C. • 645 Griswold Street, Suite 4200 • Detroit, MI 48226 • (313) 961-4400

    g. Appreciate the presence of abnormal labs, including the presence of low potassium, and properly manage the same;

    h. Prevent the patient from suffering a worsening of their condition using any and all reasonable means;

    i. Ensure John E. Griswold is treated in a timely and proper manner;

    j. Communicate and coordinate with the patient's other healthcare providers to ensure he receives the best possible care, and any and all abnormal symptoms are appropriately worked-up;

    k. Evaluate the patient for the need for psychiatric evaluation;

    l. To guard against any additional acts of negligence identified through the discovery process.

4. Trinity Health-Michigan d/b/a St. Joseph Mercy Livingston, and Emergency Physicians Medical Group, P.C., as duly accredited and licensed health care institutions, by and through their agents, actual and/or ostensible, servants, and/or employees, including, but not limited to, William J. Kanitz, M.D., any and all other physicians, physicians-in-training, physician assistants, other mid-level healthcare providers, and nursing staff, which hold themselves out to the public as being competent of rendering medical services, when confronted with a patient such as John E. Griswold, owed a duty to timely and properly:

    a. Select, employ, train, and monitor its agents, actual and/or ostensible, servants, employees and/or its staff of physicians, nurses and residents, to ensure they were competent to perform adequate medical care for a patient;

    b. Ensure that appropriate policies and procedures are adopted and followed including, but not limited to, protocol for appropriate patient history recording, including medications the patient is currently taking, and assessing the need for psychiatric evaluation;

    c. Prevent the patient from suffering a worsening of their condition using all reasonable means;

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

d. Any additional acts of negligence identified through the discovery process.

5. It is my opinion, based upon the available information, as well as my training knowledge, education, and experience in Emergency Medicine, that there was a failure to do those acts listed above, and such omissions constitute violations of the applicable standard of care.

6. In order to have conformed to the standard of care, the above-named should have done those things listed in paragraphs 3 through 4, and the respective subsections above.

7. As a direct and proximate result of John E. Griswold's healthcare providers' failure to comply with the standard of care as described above, John was prematurely returned to the jail where his condition was allowed to deteriorate, eventually suffering a sudden cardiac death from a drug overdose, passing away on October 15, 2018.

8. This opinion is based upon a review of the information to date, and may or may not change upon review of additional materials.

Bryan S. Judge MD

Subscribed and sworn to before me on this 28th day of February, 2022.

_____ [Name]
Notary Public Kent [County]
My Commission Expires: 10/27/2022

STEFANIE JO MEYERHOLTZ
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF KENT
My Commission Expires October 27, 2022
Acting in the County of Kent

McKeen & Associates, P.C. • 645 Griswold Street, Suite 4200 • Detroit, MI 48226 • (313) 961-4400