UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY GRISWOLD, as Personal
Representative of the Estate of JOHN
E. GRISWOLD,

      Plaintiff,

v.

TRINITY HEALTH-MICHIGAN, et
al.,

      Defendants.

Case No. 22-cv-10980

Honorable Robert J. White

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE HEALTHCARE DEFENDANTS' MOTION TO STRIKE DR. MICHAEL THOMSON'S EXPERT OPINION**

---

I.     Introduction

Timothy Griswold commenced this 42 U.S.C. § 1983 wrongful death action on behalf of his brother, John Griswold's estate. The Estate maintains, among other things, that Dr. William J. Kanitz engaged in medical malpractice when he treated Griswold in the emergency room at St. Joseph Mercy Livingston Hospital. Griswold passed away while detained at the Livingston County jail the following morning. The amended complaint seeks to hold the hospital and Emergency Physicians

Medical Group, P.C. vicariously liable for Dr. Kanitz's malpractice (the "Healthcare Defendants," collectively).

Before the Court is the Healthcare Defendants' motion to strike Dr. Michael Thomson's opinion – the Estate's economic damages expert. (ECF No. 117).  The Estate responded in opposition. (ECF No. 118).  The Healthcare Defendants did not file a reply.  The Livingston County Defendants concurred in the requested relief. (ECF No. 119).  The Court will decide the motion without a hearing pursuant to E.D. Mich. LR 7.1(f)(2).[1]  For the following reasons, the motion is granted in part and denied in part.

II.     Background

Dr. Thompson is the Estate's expert on economic damages.  Michigan State University awarded him a doctorate in economics in 1980. (ECF No. 117-2, PageID.4967).  He is a partner in his own research firm, Thomson Econometrics and Employment Research. (*Id.*).  And he has testified in 250 cases approximately. (*Id.*, PageID.4970-74).

---

[1] Federal district courts may conduct what is called a *Daubert* hearing to assess "the scientific validity and thus the evidentiary relevance and reliability of the principles that underlie" an expert's opinion. *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir. 1999) (cleaned up).  They are not required to hold such a hearing before admitting expert testimony. *Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000); *see also In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 532 (6th Cir. 2008).

Dr. Thomson authored an expert report in this case, opining on the nature and extent of the Estate's economic damages. (ECF No. 117-2).   The Healthcare Defendants and the Livingston County Defendants both deposed him. (ECF No. 117-4).   The Healthcare Defendants now move to strike Dr. Thomson's opinion on the ground that (1) Michigan law categorically bars the recovery of future income and loss-of-household-services damages, and (2) Dr. Thomson's opinion is inadmissible under Federal Rule of Evidence 702 – the federal rule governing the admission of expert witness testimony.[2] (ECF No. 117).

III.    Analysis

A.     *Wrongful Death Act Damages*

The Estate brought state medical malpractice claims against the Healthcare Defendants under the federal supplemental jurisdiction statute, 28 U.S.C. § 1367(a). (ECF No. 5, PageID.30, ¶ 5).   "A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999); *see also Moore v. Detroit School Reform Board*, 293 F.3d 352, 359 (6th Cir. 2002).   The Court must, therefore, consult

---

[2] The Livingston County Defendants previously moved to strike Dr. Thomson's opinion. (ECF No. 58).  The Court denied the motion without prejudice as premature because of the individual Livingston County Defendants' pending appeal of this Court's decision denying them qualified immunity. (ECF No. 112; *see also* ECF Nos. 109-10).

Michigan law – specifically, the state's wrongful death statute – to ascertain the type of damages the Estate may recover.

Michigan's Wrongful Death Act provides that "[a]ll actions and claims survive death." Mich. Comp. Laws § 600.2921.  The Act "serves as a 'filter' through which the underlying action" – in this case, a medical malpractice claim – "must proceed and controls which damages are available." *Nawal Daher v. Prime Healthcare Servs.-Garden City, LLC*, 515 Mich. 254, 281 (2024).

The type of damages recoverable under the Act include:

> reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased.

Mich. Comp. Laws § 600.2922(6).

The Healthcare Defendants challenge – *as a matter of law* – the Estate's entitlement to two classes of damages: (1) Griswold's lost future income, and (2) the value of his lost household services. (ECF No. 117, PageID.4909).  The Wrongful Death Act bars recovery of the first category and permits recovery of the second.

With respect to lost future income, the parties agree that the Michigan Supreme Court's decision in *Nawal Daher v. Prime Healthcare Servs.-Garden City, LLC*, 515 Mich. 254 (2024) forecloses the Estate from obtaining that form of relief against the Healthcare Defendants. (ECF No. 118, PageID.5426, 5429).  In *Daher*,

4

the state supreme court expressly held that "lost-earning-capacity damages are not available under the WDA." *Id.* at 282. The decedent's future earnings are recoverable, however, only insofar as they compensate for the "actual pecuniary loss suffered by one entitled to or receiving support from the deceased," *i.e.*, the loss of the decedent's future "financial support."[3] *Id.* at 280 (quotation omitted); *see also* Mich. Comp. Laws § 600.2922(6).

Loss of household services presents a whole other matter. Although the *Daher* Court left open the issue of whether loss-of-services damages are available under the Wrongful Death Act, the Michigan Court of Appeals answered that question in *Demott v. VHS Harper-Hutzel Hosp., Inc.*, No. 369500, 2025 Mich. App. LEXIS 5701 (Mich. Ct. App. Jul. 17, 2025). There, the court of appeals traced the history of the Wrongful Death Act and concluded that "loss-of-services damages remain available under the WDA following *Daher*, as they have been since Michigan's death act was enacted in 1848." *Id.* at *21. The Estate is, therefore, not precluded from obtaining loss-of-services damages as a matter of law.

---

[3] This same principle determines whether the Estate may recover the loss of Griswold's future Social Security disability benefit payments. (ECF No. 117-2, PageID.4929; ECF No. 117-5, PageID.5167, p.11:15-16). Prospective Social Security disability benefits qualify as future income under the Wrongful Death Act. *See Moore v. United States*, No. 97-713, 1999 U.S. Dist. LEXIS 6659, at *32 (W.D. Mich. Apr. 30, 1999). But they are recoverable only so long as a jury determines that such an award would compensate for the "actual pecuniary loss suffered by one entitled to or receiving support from" Griswold. *Nawal*, 515 Mich. at 280 (quotation omitted).

As for both the loss-of-financial support and loss-of-services damages, a jury must decide whether Griswold's heirs harbored a "reasonable expectation of continued support in determining damages arising from [his] death." *Thompson v. Ogemaw County Board of Road Comm'rs*, 357 Mich. 482, 489 (1959); *see also Demott*, 2025 Mich. App. LEXIS 5701 at *32. The same test applies to both types of damage because they constitute a pecuniary loss to the Estate. *See Demott*, 2025 Mich. App. LEXIS 5701 at *36 (stating that "pecuniary-loss damages . . . include loss-of-services damages."); *see also In re Olney's Estate*, 309 Mich. 65, 84 (1944).

So, to sum up, the Estate may not recover Griswold's lost future income under the Wrongful Death Act. It may recover damages for the loss of Griswold's financial support and household services as a matter of law. But to obtain these pecuniary-loss damages, the Estate must present sufficient evidence to a jury that Griswold's heirs held a "reasonable expectation of continued support."[4] *See Thompson*, 357 Mich. at 489.

---

[4] This ruling is limited to the Healthcare Defendants *exclusively*. The Court will not opine upon whether the same constraints apply to the 42 U.S.C. § 1983 claims asserted against the Livingston County Defendants since that question is not presented in the current motion. The Court observes, however, that "the survivability of § 1983 claims is generally governed by the survivorship rules of the forum state, pursuant to 42 U.S.C. § 1988." *Weatherford U.S., L.P. v. United States DOL*, 68 F.4th 1030, 1037 n.3 (6th Cir. 2023). And section 1988 may modify state survivorship rules when they are "inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988(a); *see also Robertson v. Wegmann*, 436 U.S. 584, 588 (1978). The Estate does not assert any section 1983 claims against the Healthcare Defendants. (ECF No. 5, PageID.38-42, ¶¶ 69-82).

The Healthcare Defendants contest this last point.  They contend that the Estate should be precluded entirely from proffering any evidence at trial about pecuniary-loss damages because Griswold's mother and sister already testified that he did not financially support his mother, his children, or any other close relatives. (ECF No. 117, PageID.4911-13; *see also* ECF No. 117-5, PageID.5177, p.21:8-9; ECF No. 117-6, PageID.5367, p.70:4-16).  And they further assert that "[t]here is no testimony or evidence that any heir expected any 'services' from" Griswold. (ECF No. 117, PageID.4913).

Assuming this view of the evidence is accurate, the most appropriate remedy is not the exclusion of any evidence regarding the Estate's pecuniary losses, including the striking of Dr. Thomson's expert opinion.  The Healthcare Defendants retain a more effective, precise, and less prejudicial tool for eliciting the truth: impeachment. *See* Fed. R. Evid. 607 ("Any party, including the party that called the witness, may attack the witness's credibility.").

The impeaching party may specifically resort to a witness' prior inconsistent statements to assail their credibility. *See* Fed. R. Evid. 613.  And the United States Supreme Court has long-recognized that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993); *see also Taylor v. Bristol-Myers Squibb Co. (In re Onglyza)*, 93 F.4th 339, 348 (6th Cir. 2024).

In the event Griswold's close relatives testify at trial that he did in fact support them financially, or that he did provide household services, the Healthcare Defendants may attack the veracity of those assertions with any previous statements contravening the trial testimony. The decision whether to assume the risk of placing such testimony before the jury is best left to the Estate's attorneys. The Court, for its part, declines to intrude upon counsel's purview by excluding Dr. Thomson's opinion entirely.

B.    *Expert Opinion Concerning the Loss of Griswold's Household Services*

Since loss-of-service damages are available under the Wrongful Death Act, the next question is whether Dr. Thomson's expert opinion about how to calculate those damages comports with Federal Rule of Evidence 702.

Rule 702 governs the admissibility of expert testimony. To qualify for admission, expert testimony must be "not only relevant, but reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (citation omitted). Rule 702(a) demands that "the expert's scientific, technical, or other specialized knowledge" help the trier of fact understand the evidence or determine a fact in issue – *i.e.*, the relevance component. And expert testimony is only permissible when the opinion is (1) "based on sufficient facts or data," (2) "the product of reliable principles and

methods," and (3) a "reliable application" of those "principles and methods to the facts of the case" – *i.e.*, the reliability component. Fed. R. Evid. 702(b)-(d).

Dr. Thomson's testimony passes both hurdles.  His opinion is relevant because the Wrongful Death Act authorizes the Estate to obtain loss-of-service damages. And the opinion establishes a basic formula to assist the jury with calculating the amount of any loss-of-service damages to which the Estate may be entitled at trial. *See* Fed. R. Evid. 401 (defining relevant evidence).

Dr. Thomson's opinion is also reliable.  His testimony and report are founded upon publicly available government-collected data.  Dr. Thomson drew upon a United States Department of Health & Human Services, National Vital Statistics Report, entitled "United States Life Tables, 2020," as well as the "Social Security Life Expectancy Calculator" to calculate Griswold's average life expectancy. (ECF No. 117-2, PageID.4921).  He calculated the current replacement cost of Griswold's household services at $25 per hour, using regional market surveys and his own proprietary research.[5]  (ECF No. 117-2, PageID.4976-85; ECF No. 117-4, PageID.5101-13).  He reduced future damages to present value by employing a formula established under Michigan law. *See* Mich. Comp. Laws § 600.6306(2).

---

[5] Since the Healthcare Defendants do not attack the reliability of the regional market surveys or Dr. Thomson's proprietary research, the Court need not address their reliability either. *See* Fed. R. Evid. 702 advisory committee's note to 2023 amendments (stating that Rule 702 does not "require that the court make a finding of reliability in the absence of [an] objection.").

(ECF No. 117-2, PageID.4933-35).  And Dr. Thomson adjusted present values for future cost inflation at 4 percent after consulting, among other things, the United States Social Security Administration's 45-year average wage index, the 2018 Annual Report of The Board of Trustees of the Federal Old-Age and Survivors Insurance and Federal Disability Insurance Trust Funds, and Standard & Poor's and Moody's long-term labor market forecasts. (ECF No. 117-2, PageID.4956, 4961; ECF No. 117-4, PageID.5064, 5137, pp.55:21-25, 128:12-19).

The Healthcare Defendants counter that Dr. Thomson's valuation of the loss-of-service damages is unreliable for two reasons.  *First*, they assert that Dr. Thomson's estimation of the range of hours Griswold would have contributed to daily household work is speculative. (ECF No. 117, PageID.4905-07).  But the validity of Dr. Thomson's loss-of-service calculations is not dependent upon any specific hourly range.  Fact witness testimony from Griswold's close relatives, like his mother and sister, would establish the daily hours (if any) Griswold would have contributed to household services. (ECF No. 117-4, PageID.5044-47, pp.35:3-38:25). *See Morvant v. Construction Aggregates Corp.*, 570 F.2d 626, 633 (6th Cir. 1978) (reversing the district court's exclusion of expert testimony on loss-of-service damages and holding that the expert's testimony "should be presented to the jury for its consideration" on remand "where there is proof to support it.").  The jury could

10

then plug those daily figures into Dr. Thomson's formula to ascertain the Estate's loss-of-service damages.

*Second*, the Healthcare Defendants argue that the $25-per-hour valuation Dr. Thomson assigned to Griswold's household work is equally speculative because it does not correspond to the household services Griswold actually performed when he was alive. (ECF No. 117, PageID.4908). As discussed above, Dr. Thomson relied upon regional market surveys and his own proprietary research to value the current replacement cost of Griswold's household services at $25 per hour. (ECF No. 117-2, PageID.4976-85; ECF No. 117-4, PageID.5101-13). He calculated $25 per hour because it reflected the "lowest level available for unskilled or low-skilled household duties" according to the survey information. (ECF No. 117-4, PageID.5113, p. 104:18-20; *see generally* PageID.5113-17, pp.104:2-108:18). And Dr. Thomson settled upon that figure after reviewing Griswold's mother's deposition testimony – where "she described a range of services [Griswold] would be providing" – and basing his calculations upon "the range of services from unskilled to semi-skilled" that she described. (ECF No. 117-4, PageID.5100-01, pp.91:20-92:1, 92:11-13). So there is little room to question the reliability of Dr. Thomson's methodology. *See United States v. Reynolds*, 626 F. App'x 610, 614 (6th Cir. 2015) ("When evaluating the reliability of expert testimony, we focus solely on principles and methodology, not on the conclusions that they generate.") (quotation omitted).

Ultimately, to the extent the Healthcare Defendants contest whether Dr. Thomson's methodology yielded an accurate hourly valuation, they are challenging the "weight" his "opinion [should be] given at trial . . . not its threshold admissibility." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 182 (6th Cir. 2009). Precluding Dr. Thomson's calculations of the Estate's loss-of-service damages is, therefore, unwarranted.

Because Dr. Thomson's opinion concerning the Estate's loss-of-service damages is both relevant and reliable, it is admissible at trial against the Healthcare Defendants. Accordingly,

IT IS ORDERED that the Healthcare Defendants' motion to strike Dr. Thomson's expert opinion (ECF No. 117) is granted in part and denied in part.

IT IS FURTHER ORDERED that the motion is granted insofar as the Estate is precluded from offering Dr. Thomson's opinion to demonstrate its entitlement to the loss of Griswold's future earning capacity as against the Healthcare Defendants.

IT IS FURTHER ORDERED that the motion is denied insofar as the Estate is permitted to offer Dr. Thomson's opinion to demonstrate its entitlement to the loss of Griswold's future financial support.

13

IT IS FURTHER ORDERED that the motion is denied insofar as the Estate is permitted to offer Dr. Thomson's opinion to demonstrate its entitlement to the loss of Griswold's household services.

Dated: March 13, 2026                          s/ Robert J. White
                                               Robert J. White
                                               United States District Judge